IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


UNITED STATES OF AMERICA,

    Plaintiff,                                                            Cr. No. 18-1961 JAP

v.

MARCUS MARTINEZ,

    Defendant.


## MEMORANDUM OPINION AND ORDER

New Mexico State Police Officer Nathan Lucero stopped Defendant Marcus Martinez for driving three miles per hour above the posted speed limit. Defendant signed a written consent form giving Officer Lucero permission to search the vehicle. During the search, Officer Lucero uncovered approximately thirteen pounds of methamphetamine. On June 13, 2018, a federal grand jury indicted Defendant on one count of possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Now, Defendant seeks to suppress the evidence found during the search.[1] The Court concludes that the discovery of the evidence in the vehicle was the result of a lawful search and will thus deny Defendant's Motion.

## BACKGROUND[2]

On the morning of May 3, 2018, Officer Lucero observed a car heading eastbound on Interstate 40 traveling 78 miles per hour in a 75-mile-per-hour zone. Motion to Suppress Hearing,

---

[1] *See* MOTION TO SUPPRESS EVIDENCE ("Motion") (Doc. 18); UNITED STATES' RESPONSE TO MOTION TO SUPPRESS EVIDENCE ("Response") (Doc. 20).
[2] The following section constitutes the Court's essential findings of fact under Federal Rule of Criminal Procedure 12(d).

December 20, 2019, Tr. 8:9–10, 20–25; 9:1, 14–16.[3] He determined the speed of the vehicle by using a Stalker DSR 2X radar detector.[4] Earlier that morning, Officer Lucero had tested the radar detector and determined it was working properly. Tr. 7:2–13. Based on the radar detector's reading, Officer Lucero believed that the driver of the vehicle was violating NMSA § 66-7-301, which provides that "[n]o person shall drive a vehicle on a highway at a speed greater than . . . seventy-five miles per hour." Tr. 9:20–24. As a New Mexico State Police Officer, Officer Lucero was charged with enforcing New Mexico traffic laws, so he turned on his emergency equipment and signaled for the vehicle to pull over. *Id.* at 5:21–24; 10:10–14.

Officer Lucero, dressed in full uniform with his service weapon visible, exited his patrol unit and approached the passenger side of the vehicle. *See* Tr. 6:4; 11:17–20; CD 00:02:19.[5] Defendant was the sole occupant. Tr. 12:2–3. Officer Lucero explained that he had stopped Defendant for speeding and requested Defendant's driver's license, vehicle registration, and insurance information. Tr. 12:13–21; CD 00:02:20–29. Defendant provided the officer with his license and the vehicle's insurance card. Tr. 13:1–2. The insurance card identified the owner of the vehicle as Sergio Hernandez, although Defendant later informed Officer Lucero that his friend Carlos Delgado owned the car. *Id.* at 13:25; 14:1–2; 17:24–25; CD 00:04:28–37.

Officer Lucero requested that Defendant exit the vehicle and stand near Officer Lucero's patrol unit. CD 00:03:10–13. Defendant complied. *Id.* at 00:03:18–30. He then asked for permission to speak with Defendant while he prepared a warning citation for speeding. *Id.* at 00:03:35–40. In response to Officer Lucero's questions regarding his travel plans, Defendant

---

[3] This MEMORANDUM OPINION AND ORDER cites to the court reporter's unofficial transcript. All page and line citations are subject to change on the official, edited transcript.

[4] *See* UNITED STATES' RESPONSE TO THE DEFENDANT'S MOTION TO COMPEL THE DISCLOSURE OF ADDITIONAL DISCOVERY (Doc. 22).

[5] A CD containing dashcam video footage of the encounter between Officer Lucero and Defendant was delivered to the Court on October 23, 2019. Defendant's NOTICE OF LODGING OF VIDEO (Doc. 19). The Court's citations to the dashcam video take the following form: CD 00:00:00.

explained that he was driving from California—where he had celebrated his birthday—to Texas—where he lived. *Id.* at 00:03:44–53. Defendant further explained that he and his friend Carlos had traveled to California together. They left Texas on Sunday afternoon so that Carlos could attend to a family emergency in California. *Id.* at 00:05:00–17. But when Defendant left to return to Texas, Carlos decided to remain in California. *Id.* at 00:05:22–35. As Defendant detailed his travel plans, his gaze continuously shifted between the vehicle and Officer Lucero's patrol unit.[6]

Officer Lucero requested and received permission to inspect the car's vehicle identification number ("VIN"). CD 00:06:30–45. After checking the VIN, Officer Lucero returned Defendant's driver's license and insurance card. Doc. 18-1 at 2. Officer Lucero observed at this point that Defendant was extremely nervous. *Id.* Nevertheless, he again advised Defendant of the reason for the traffic stop and explained that Defendant was going to receive a warning citation for speeding. CD 00:08:34–40. Officer Lucero requested that Defendant sign the citation, which Defendant did. Officer Lucero observed Defendant's hand shaking as he held the pen.[7] Tr. 24:2–23. Officer Lucero then informed Defendant that he was free to leave. CD 00:09:04.

Generally, Officer Lucero takes between seven and ten minutes to conduct a traffic stop and issue a warning citation. Tr. 25:20–23. In this case, approximately seven minutes passed from when Officer Lucero made contact with Defendant to when he informed Defendant that he was free to leave. *Id.* at 19:12–18.

As Defendant began to walk back to his car, Officer Lucero called out to Defendant: "Mr.

---

[6] *See* STATE OF NEW MEXICO INCIDENT REPORT (Doc. 18-1).
[7] *See* APPENDIX/SUPPLEMENT RE 18 MOTION TO SUPPRESS EVIDENCE EXHIBIT D – NM TRAFFIC CITATION ("Citation") (Doc. 28). At the hearing, defense counsel urged the Court to find that Defendant's signature on the citation did not appear "squiggl[y]" or in any way indicate that Defendant's hand was shaking or that he was nervous when he signed the citation. Tr. 79:1–9 (Defense counsel also made similar arguments about Defendant's signature on the consent to search form). The Court, however, will give "deference . . . to . . . a law enforcement officer's ability to distinguish between innocent and suspicious actions." *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997). Thus, the Court finds that Defendant's hands shook and that he displayed signs of nervousness.

Martinez." *Id.* at 00:09:10–12. Upon hearing his name, Defendant turned around and walked back towards Officer Lucero's patrol unit. *Id.* at 00:09:12–16.

At that point, Officer Lucero requested permission to ask Defendant additional questions. *Id.* at 00:09:17–23. Defendant agreed to speak with him. Doc. 8-1 at 2. In response to Officer Lucero's inquiry, Defendant elaborated on his trip to California. He explained that he and Carlos had planned the trip on Sunday and left Texas that night and arrived in California on Monday afternoon. CD 00:09:26–40; 00:10:52–11:03. Defendant again stated that Carlos had a family emergency in California but admitted that he did not know the details of the emergency. *Id.* at 00:10:26–31. The two men elected not to stay with Carlos's family and instead stayed at the Ayres Hotel in Ontario, California. *Id.* at 00:10:04–19; 00:10:26–31. And although he had always wanted to visit California, Defendant left California on Wednesday morning after spending just one full day there. *Id.* at 00:09:26–40; 00:11:07–09; Doc. 18-1 at 2.

Officer Lucero next asked about what was in the vehicle. Defendant stated that he had a bag on the front seat and that Carlos had a toy for his daughter in the vehicle. CD 00:11:43; 00:12:10–13. Officer Lucero asked Defendant if he was responsible for everything in the car, and Defendant confirmed that he was, except for the toy Carlos bought for his daughter. *Id.* at 00:12:24–26; 00:12:30–33. When pressed about whether there was anything in the vehicle that should not be there, Defendant admitted that there was a small amount of "weed" in the vehicle. *Id.* at 00:12:34–47. Officer Lucero asked whether there was anything else that should not be there, and Defendant responded no. *Id.* at 00:12:48–52. Officer Lucero followed up, asking if the vehicle contained any weapons, large amounts of money, or other drugs. Again, Defendant responded negatively. *Id.* at 00:12:53–13:22.

Finally, Officer Lucero asked Defendant for permission to search the car. *Id.* at 00:13:22–

25. The dashcam recording did not pick up a response. Then Officer Lucero asked again whether he had permission to search the vehicle, at which point Defendant responded yes. *Id.* at 00:13:25–27; Doc. 18-1 at 3. Officer Lucero presented Defendant with a "Consent to Search Form" and asked Defendant to read it. CD 00:13:27–35. Defendant read the form and stated that he had no questions or concerns. *Id.* at 00:14:07–09. Officer Lucero asked Defendant to print his name and sign the form. *Id.* at 00:14:10–15. Defendant did so. Doc. 18-1 at 3.

Subsequently, Officer Lucero conducted a search of the vehicle,[8] which uncovered ten bags containing approximately thirteen pounds of methamphetamine. Doc. 18-1 at 3. On June 13, 2018, a federal grand jury indicted Defendant on one count of possession with intent to distribute 500 grams and more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).[9] On October 23, 2019, Defendant filed his Motion to Suppress. On December 20, 2019, the Court held a hearing on the Motion to Suppress.[10] Assistant United States Attorney Samuel Hurtado appeared on behalf of Plaintiff, United States of America; Defendant was present and was represented by Attorney Devon Fooks. Officer Lucero, the only witness, testified, and counsel presented their arguments.

## **LEGAL STANDARD**

The Fourth Amendment protects individuals against unreasonable searches. U.S. Const. amend. IV. Generally, law enforcement officers may conduct a warrantless search of an automobile only on facts giving rise to probable cause. *See United States v. Ross*, 456 U.S. 798, 823 (1982). But "[a] warrantless search is, of course, not unreasonable when the party in control

---

[8] At the hearing, during the United States' examination of Officer Lucero, Defendant objected to questions regarding what occurred during the search on relevance grounds. Tr. 36:6–14. Defendant clarified that the Motion concerned the initial stop, the extension of the stop, and the consent to search, but not the officer's activity during the search. *Id.* at 36:6–14; 42:3–10. Accordingly, the Court will not detail how Officer Lucero conducted the search.
[9] *See* REDACTED INDICTMENT (Doc. 2).
[10] *See* Clerk's Minutes filed Jan. 6, 2020 (Doc. 29).

5

[of the property] voluntarily consents." *United States v. Diaz-Albertini*, 772 F.2d 654, 658 (10th Cir. 1985).

Before the Court "may admit evidence resulting from a consent search, it must determine from the totality of circumstances that (1) the defendant's consent was voluntary and (2) the search did not exceed the scope of the consent."[11] *United States v. Dewitt*, 946 F.2d 1497, 1500 (10th Cir. 1991). "The government bears the burden on the voluntariness issue." *Id.* (citing *United States v. Abbott*, 546 F.2d 883, 885 (10th Cir. 1977)). "First, it must present 'clear and positive testimony that consent was unequivocal and specific and freely and intelligently given.' Second, the government must show that the police did not coerce the defendant into granting his consent." *United States v. Pena*, 143 F.3d 1363, 1366 (10th Cir. 1998) (internal citation omitted) (quoting *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995)).

Furthermore, a defendant may contend that law enforcement violated his constitutional rights and those violations tainted his consent. *See United States v. Chavira*, 467 F.3d 1286, 1291 (10th Cir. 2006). If a defendant advances such an argument, he bears the initial burden to demonstrate a "factual nexus between the illegality and the challenged evidence"—that is, that the "unlawful search [was] *at least* the but-for cause of [the evidence's] discovery." *Id.* (emphasis in original). If the defendant satisfies his initial burden to establish causation, the government must prove that the discovery of the evidence "was so attenuated from the illegality as to dissipate the taint of the unlawful conduct." *United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000). When determining attenuation, the Court considers three factors: "1) the temporal proximity between the police illegality and the consent to search; 2) the presence of intervening circumstances; and particularly 3) the purpose and flagrancy of the official misconduct." *United*

---

[11] Defendant does not argue that the search exceeded the scope of his consent.

6

*States v. Melendez-Garcia*, 28 F.3d 1046, 1054 (10th Cir. 1994).

## ANALYSIS

Defendant seeks to suppress all evidence obtained from the search of the vehicle on the basis that Officer Lucero violated his rights by unconstitutionally: (1) initiating a traffic stop without objectively reasonable information; (2) extending the stop beyond what was necessary to enforce the speed limit without reasonable suspicion or consent; and (3) obtaining Defendant's involuntarily consent to search the vehicle. Mot. at 1.

   a. **Whether Officer Lucero had objectively reasonable information to support the stop**

"A traffic stop is an investigative detention analogous to a *Terry* stop, in that, although probable cause is not required, the detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping the automobile." *United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993); *see also United States v. DeGasso*, 369 F.3d 1139, 1143 (10th Cir. 2004) (explaining that to be valid, a traffic stop must be objectively justified at its inception). "Probable cause exists if facts and circumstances within the . . . officer's knowledge and of which [the officer] has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995) (quoting *Jones v. City & Cty. of Denver, Colo.*, 854 F.2d 1206, 1210 (10th Cir. 1988)). Meanwhile, "[f]or reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct'; [the officer] simply must possess 'some minimal level of objective justification' for making the stop." *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Vercher*, 358 F.3d 1257, 1261 (10th Cir. 2004)).

Defendant argues that the traffic stop was not justified at its inception because Officer

Lucero did not have an objectively reasonable belief that Defendant exceeded the speed limit by three miles per hour. Mot. at 6. Defendant avers that no indication exists as to how Officer Lucero determined Defendant was traveling three miles above the speed limit. *Id.* at 7. Defendant claims that "[a]s such, the stop was not justified at the inception because the Government cannot establish that [Officer] Lucero's belief [that Defendant] exceeded the speed-limit by three miles-per-hour was objectively reasonable." *Id.*

Since Defendant filed the Motion, however, the United States has provided Defendant information regarding the radar detector Officer Lucero used prior to initiating the traffic stop. *See* Resp. to Mot. to Compel at 1. Officer Lucero used a Stalker DSR 2X radar detector to determine that the vehicle was traveling at 78 miles per hour—three miles above the legal speed limit. *See* NMSA 1978 § 66-7-301. At the hearing, Officer Lucero testified about the radar detector he used on May 3, 2018. Based on that testimony, the Court finds that the radar detector used to determine the speed of the vehicle was functioning properly. The stop was clearly supported by a reasonable suspicion that a traffic violation had occurred. Thus, no constitutional violation occurred during the initiation of the traffic stop.

**b. Whether Officer Lucero extended the stop, without consent or reasonable suspicion, beyond what was necessary to enforce the speed limit**

When a police officer observes a traffic violation, the officer may stop the vehicle for the time necessary "to address the traffic violation that warranted the stop and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 355 (2015) (internal citations omitted). During the stop, the officer may also engage in "certain unrelated investigations that d[o] not lengthen the roadside detention," such as conducting "ordinary inquiries incident to [the traffic] stop." *Id.* Generally, those unrelated investigations may not prolong the stop beyond the time

reasonably required to address the traffic violation. *See id.* The officer may, however, prolong the traffic stop for such unrelated investigations if the defendant consents to the extension or the officer's reasonable suspicion of other criminal activity justifies the extension of the stop. *See United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1259 (10th Cir. 2006).

Here, Officer Lucero did not violate Defendant's constitutional rights by asking questions unrelated to the traffic violation while he prepared the warning citation. Officer Lucero testified that on average he can complete a traffic stop in seven to ten minutes. The time in this case was well within that margin—Officer Lucero testified that when he informed Defendant he was free to leave, approximately seven minutes had passed. Further, the Supreme Court has emphasized that a traffic stop "remains lawful only so long as [unrelated] inquiries do not measurably extend the duration of the stop." *Rodriguez*, 575 U.S. at 355 (internal quotation marks omitted) (bracket in original). In this case, there is no indication that Officer Lucero's questioning of Defendant, while he prepared the written citation, impermissibly extended the stop.

Officer Lucero returned Defendant's papers and informed Defendant that he was free to go, effectively acknowledging that the time required to address the traffic violation had expired. When Defendant walked towards the vehicle to leave, Officer Lucero called out, "Mr. Martinez." Defendant then turned around and walked back towards Officer Lucero's patrol unit. This, Defendant argues, resulted in an unconstitutional seizure because Officer Lucero made a show of authority to which Defendant submitted. Mot. at 7. Defendant also maintains that Officer Lucero did not have reasonable suspicion to extend the traffic stop beyond the issuance of the warning. *Id.* at 8. For its part, the United States argues that none of Officer Lucero's actions delayed or extended the traffic stop in a way that would offend *Rodriguez*. Resp. at 11 ("the United State' primary argument is that there was no such delay."). At the hearing, the United States clarified its

position that *Rodriguez* was not violated because Defendant consented to the continued encounter with Officer Lucero. *See* Tr. 95:7–13 ("Mr. Lucero did not have to have any reasonable suspicion to believe that the defendant was involved in other criminal activity beyond the traffic stop to simply engage him in a consensual encounter.").

The Court concludes that by calling out Defendant's name, Officer Lucero extended the traffic stop and thus needed consent or reasonable suspicion to justify the continued encounter. Indeed, under *Rodriguez*, "[a]uthority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." 575 U.S. at 348. The Tenth Circuit examined when an officer's authority for a seizure ended in *Alcaraz-Arellano*, 441 F.3d at 1259. There, a deputy conducted a traffic stop, returned the driver's documentation, and said "adios." *Id.* Only after saying "adios" did he request permission to ask a few more questions. *Id.* The Tenth Circuit explained that "[t]he questioning after the return of the license . . . must be analyzed differently [than questioning that did not prolong the roadside detention] because it *did* prolong the stop." *Id.* (emphasis in original). Here, Officer Lucero returned Defendant's documentation, issued a warning, and informed Defendant that he was free to leave. Only after informing Defendant that he was free to leave did Officer Lucero reengage Defendant in questioning. This action extended the stop beyond the time necessary to address the traffic violation. *See Rodriguez*, 575 U.S. at 348. But, as the Court explains below, Defendant consented to the continued encounter with Officer Lucero,[12] and thus Officer Lucero's conduct did not violate *Rodriguez. See, e.g.*,

---

[12] The Court will not address whether reasonable suspicion could have supported the prolonged encounter. The United States has consistently maintained that the encounter was consensual. Resp. at 7–9; Tr. 95:7–13. Further, the United States' position regarding reasonable suspicion clearly fails under *Rodriguez.* The United States asserts that "[Officer Lucero] had reasonable suspicion to stop Defendant for speeding . . . ." Resp. at 10. Yet, it offers no additional argument about how reasonable suspicion justified the prolonged encounter after Officer Lucero informed Defendant he was free to leave. As we know, reasonable suspicion supporting the initial traffic violation does not extend past the time necessary to effectuate the traffic stop. *See Alcaraz-Arellano*, 441 F.3d at 1259. The United States abandoned the reasonable suspicion argument at the hearing, insisting instead that "[w]hat it comes down to is consent." Tr. 97:5.

*United States v. Werking*, 915 F.2d 1404, 1408 (10th Cir. 1990) ("The initial investigative detention was concluded when [the officer] returned [the driver's] license and registration papers. At this point, the encounter between [the driver] and [the officer] became an ordinary consensual encounter between a private citizen and a law enforcement official.").

(i) Consent

"If a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required. The encounter will not trigger Fourth Amendment scrutiny unless it loses its consensual nature." *Soto*, 988 F.2d at 1557 (internal quotation marks omitted). The Tenth Circuit has "enumerated a non-exhaustive list of factors to be considered in determining whether a reasonable person would feel free to terminate his encounter with the police." *United States v. Hernandez*, 847 F.3d 1257, 1264 (10th Cir. 2017). Those factors are:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*Id.* (citation omitted). "Although no single factor is dispositive, the strong presence of two or three factors may be sufficient to support the conclusion a seizure occurred." *Id.* (internal quotation marks and citation omitted). The Court evaluates these factors using an objective standard. *United States v. Easley*, 911 F.3d 1074, 1079 (10th Cir. 2018), *cert. denied,* 139 S. Ct. 1644, 203 L. Ed. 2d 917 (2019).

Here, Defendant was walking towards the vehicle when Officer Lucero called out "Mr. Martinez." Defendant then turned around and walked back towards Officer Lucero. The Court

11

finds that Officer Lucero's tone of voice was not demanding or insisting and Defendant's return to Officer Lucero's patrol unit was not compulsory. *See United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006) (explaining that the "use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory" is one factor in determining whether an encounter was not consensual). Other factors that favor a consensual encounter include that Officer Lucero did not brandish a weapon; he was not accompanied by the presence of other officers; and he did not have any of Defendant's property in his possession. Further, he did not request that Defendant accompany him to the police station. And Defendant was not kept in a small, enclosed space, but was out in public on the side of the road. Importantly, Officer Lucero did not behave in any way that would indicate that Defendant was not free to terminate the encounter. *Easley*, 911 F.3d at 1080 (observing that "when we speak of a coercive environment, we mean an *environment that is the creation of law enforcement conduct*." (emphasis added)).

Two relevant facts caution against a conclusion that the prolonged encounter was consensual, although the Court ultimately finds them unpersuasive. First, the United States concedes that Officer Lucero "did not explicitly explain to . . . [D]efendant that he did not have to speak with him."[13] Resp. at 8. But the Supreme Court has "expressly rejected [a] rule which made all police encounters non-consensual where officers failed to advise individuals of their right not to comply with their requests." *United States v. Thompson*, 546 F.3d 1223, 1228 (10th Cir. 2008). Accordingly, Officer Lucero's failure to so advise Defendant carries little weight in the Court's analysis. Second, Officer Lucero was in full uniform and visibly armed during the traffic stop.

---

[13] This concession made in the United States' brief is at odds with Officer Lucero's hearing testimony. Tr. 65:11–14 (Officer Lucero: "I asked him . . . 'Mr. Martinez, can I ask you some questions?' He stated, 'Yes.' Then I asked him, 'Do you understand that you're free to go?' And he said, 'Yes.'"). The Court has reviewed the dashcam recording of the encounter and finds that Officer Lucero did not in fact inform Defendant that he was free to terminate the encounter at any time.

12

Law enforcement officers, however, routinely conduct traffic stops in full uniform, and Officer Lucero never unholstered his weapon or actively used it to threaten or intimidate Defendant. *See Soto*, 988 F.2d at 1558 (analyzing whether the officer unholstered his weapon as part of the consent analysis). Thus, neither of these factors (nor the two factors combined) convince the Court that the prolonged encounter constituted a Fourth Amendment seizure. *Cf. Hernandez*, 847 F.3d at 1264 ("Although no single factor is dispositive, the *strong* presence of two or three factors may be sufficient to support the conclusion a seizure occurred." (emphasis added)).

The Tenth Circuit reached a similar conclusion in *Soto*, 988 F.2d at 1558. There, the Tenth Circuit concluded that the defendant voluntarily consented where the officer "did not unholster his weapon, did not use an insisting tone or manner, did not physically harass defendant, and no other officers were present. Further, the incident occurred on the shoulder of an interstate highway, in public view." *Id.* All of those same factors supporting consensuality are present in this case.

The Court concludes that the prolonged encounter was consensual and that no seizure occurred. Accordingly, the Fourth Amendment's strictures were not implicated. And because no constitutional violations preceded Defendant's consent to the search of the vehicle, no constitutional violations tainted that consent.

   c. **Whether Defendant voluntarily consented to the search of the vehicle**

Finally, Defendant argues that his consent to search the vehicle was involuntary. While "[t]he voluntariness of consent must be determined from the totality of the circumstances," *Soto*, 988 F.2d at 1557, the Court is guided by the following factors:

> physical mistreatment, use of violence, threats, promises, inducements, deception, trickery, or an aggressive tone, the physical and mental condition and capacity of the defendant, the number of officers on the scene, and the display of police weapons. Whether an officer reads a defendant his Miranda rights, obtains consent pursuant to a claim of lawful authority, or informs a defendant of his or her right to refuse consent also are factors to consider in determining whether consent given

was voluntary under the totality of the circumstances.

*United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012) (quoting *United States v. Harrison*, 639 F.3d 1273, 1278 (10th Cir. 2011)).

Here, Officer Lucero asked Defendant whether he would consent to a search of the vehicle, and Defendant consented. Officer Lucero handed Defendant the consent to search form jand asked Defendant to read it. He then asked if Defendant had any questions or concerns, to which Defendant answered no. Officer Lucero then asked Defendant to sign and date the form, which Defendant did.

Under these circumstances, the consent to search was valid. There was no violence, threats, promises, inducements, or trickery. Officer Lucero was the only officer at the scene and did not brandish his weapon. He asked Defendant whether he understood the form he had just read giving Officer Lucero consent to search the vehicle, to which Defendant responded yes. Defendant makes no contention that he misunderstood Officer Lucero. Indeed, the circumstances had not materially changed from when Defendant consented to a continued encounter with Officer Lucero. Based on the totality of the circumstances, the Court concludes that Defendant's consent was voluntary.

IT IS THEREFORE ORDERED THAT Defendant Marcus Martinez's Motion to Suppress Evidence (Doc. 18) is DENIED.

_____
SENIOR UNITED STATES DISTRICT JUDGE